IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| VICTORIA M. STUTTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17CV586 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Victoria M. Stutts ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Disabled Widow's Benefits under Title II of the Act as well as Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits, Disabled Widow's Benefits, and Supplemental Security Income Benefits on December 27, 2012, alleging a disability onset date of March 31, 2011 in all applications. (Tr. at 21, 377-90.)[1] Her

---
[1] Transcript citations refer to the administrative record [Doc. #7].

applications were denied initially (Tr. at 73-165, 228-39) and upon reconsideration (Tr. at 166-227, 244-300). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 302-09.) Plaintiff, along with her attorneys and an impartial vocational expert, attended the subsequent hearing on January 6, 2016. (Tr. at 21.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through June 22, 2016, the date of her decision. (Tr. at 36.) On April 25, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since March 31, 2011, her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease; migraine headaches; mild carpal tunnel syndrome; a mood disorder; borderline intellectual functioning; personality disorder; a learning disorder; and a possible neurocognitive disorder.

(Tr. at 24.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 24-28.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work, with the following, additional limitations:

> She is limited to performing simple, routine, and repetitive tasks. She is limited to working in a low stress environment, i.e., she can only occasionally make

decisions and have occasional changes in her work setting.

(Tr. at 28.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff remained capable of performing her past relevant work as a cleaner. (Tr. at 35.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 36.) Plaintiff now raises two challenges to the ALJ's RFC assessment, both based on the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Specifically, she contends that the RFC fails to adequately reflect (1) Plaintiff's moderate limitations in concentration, persistence, or pace or (2) the specific social functioning and concentration limitations identified by the State agency psychological consultants. After a thorough review of the record, the Court finds that neither of these contentions merit remand.

    A.    Concentration, Persistence, or Pace

At step three of the sequential analysis, the ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit explained that where such limitations are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in
> concentration, persistence, or pace at step three does not translate into a

6

limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff s moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In the present case, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 26.) Later in the sequential analysis, the ALJ formulated a mental RFC limiting Plaintiff to simple, routine, and repetitive tasks. Notably, the ALJ also limited Plaintiff "to working in a low stress environment, i.e., she can only occasionally make decisions and have occasional changes in her work setting." (Tr. at

28.) Plaintiff now argues that, in making her RFC finding, the ALJ "did not fully determine or discuss in the decision [Plaintiff's] ability to stay on task [in light of] her moderate difficulties with concentration, persistence, or pace." (Pl.'s Br. [Doc. #10] at 6.) Accordingly, Plaintiff contends that the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusions so that [the Court] may afford [Plaintiff] meaningful review of the SSA's ultimate findings." Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003).

However, as set out above, remand is not required under Mascio where the ALJ's discussion of, and reliance on, substantial record evidence adequately explains why the plaintiff's moderate limitation at step three did not translate into any additional RFC restrictions. See, e.g., Jones, 2015 WL 5056784, at *3-4; Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *5-6 (W.D.N.C. Aug. 25, 2015); Walker v. Colvin, No. 6:14-cv-00025, 2015 WL 5138281, at *11 (W.D. Va. Aug. 31, 2015). In this case, the ALJ expressly relied on the opinions of the State agency psychological consultants, Jonathan Mayhew, Ph.D. and Clifford Charles, Ph.D, in assessing Plaintiff's RFC. (Tr. at 34.) Both consultants found Plaintiff capable of simple, routine, repetitive tasks in a low stress setting despite her moderate limitations in concentration, persistence, or pace (Tr. at 121, 126, 178, 183.)[4] The ALJ not only adopted these findings, but further defined "low stress environment" as one in which Plaintiff would "only occasionally make decisions and have occasional changes in her work setting." (Tr. at 28.) In reaching this conclusion, the ALJ set out the following analysis:

> At the initial and reconsideration levels, State agency psychological consultants Johathan Mayhew, Ph.D., and Clifford Charles, Ph.D., concluded [that Plaintiff] can perform simple routine, repetitive tasks in a low stress setting. The State agency psychological consultants' mental assessments are given significant

---
[4] To the extent that the ALJ's RFC assessment omits the consultants' further finding that Plaintiff requires a workplace with low social demands, the Court addresses this issue in subsection B, infra.

weight because they are consistent with [Plaintiff's] brief and conservative mental health treatment history, the evidence related to her daily activities and work history, and the clinical findings of the psychological consultative examiners. To the extent Dr. Mayhew concluded the claimant was limited to performing work in a low social environment his opinion is given little weight because it appears based on [Plaintiff's] self reports and not clinical findings.

(Tr. at 34.) Thus, in adopting the RFC, the ALJ specifically relied on the conclusions of the state agency consultants, both of whom concluded that while she had moderate limitations in concentration, persistence, or pace, her mental limitations were not so severe as to prevent her from performing simple, routine, repetitive tasks in a low stress setting. The ALJ further based this determination on (1) Plaintiff's brief and conservative mental health treatment history, addressed at length by the ALJ (Tr. at 29-30); (2) Plaintiff's daily activities and work history, also addressed several times by the ALJ (Tr. at 25, 28, 29); and (3) the clinical findings of the psychological examiners, also addressed repeatedly by the ALJ (Tr. at 30, 32-33). With respect to the psychological examiners, the record includes four examinations from two different examiners. Plaintiff was examined by Dr. Maginn in July 2011 and May 2013, and by Dr. Malterer in October 2013. At the hearing on January 6, 2016, Plaintiff's counsel requested an updated consultative psychological examination, and Plaintiff was examined again by Dr. Maginn in March 2016. With respect to that examination, the ALJ found that:

> Based on his March 2016 psychological consultative evaluation, Dr. Magino concluded [that Plaintiff] has moderate[] limitations in her abilities to make simple work-related decision[s], understand and remember complex instructions, carry out complex instructions, interact appropriately with others, and respond appropriately in usual work situations and to changes in a routine work setting. Dr. Maginn's opinions are given partial weight because his conclusions are generally consistent with his clinical findings at this exam and prior exams; however, his conclusions regarding the claimant's social functioning appear primarily based on [Plaintiff's] self-reports and not his clinical findings.

9

(Tr. at 33.) Consistent with this evaluation, the ALJ adopted an RFC that limited Plaintiff to simple, routine, repetitive tasks, in a low stress environment where she only occasionally makes decisions and there are only occasional changes in her work setting. The only part of the psychological evaluation not incorporated in the RFC relates to Plaintiff's ability to interact with others and respond appropriately, and the ALJ specifically noted that those portions of the evaluation were based on Plaintiff's self-reports and not clinical findings. Thus, in this case, the ALJ allowed substantial development of the record, including ordering a fourth psychological consultative evaluation at Plaintiff's request, and the ALJ considered and discussed the record at length and built a substantial bridge between the evidence in the record and the RFC. Therefore, the Court finds no basis for reversal under <u>Mascio</u>.

    B.    Function-by-Function Assessment

Plaintiff next contends that, despite assigning significant weight to the assessments completed by Drs. Mayhew and Charles (Tr. at 34), the ALJ failed to either include (1) all of the consultants' opined mental limitations in the RFC or (2) explain the absence of such limitations in accordance with <u>Mascio</u>. See <u>Mascio</u> 780 F.3d at 636 ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). In the present case, however, the "relevant functions" cited by Plaintiff amount to no more than minor distinctions in the underlying functional areas set out in Section I of the mental RFC forms. Notably, these ratings do not constitute the consultants' ultimate RFC assessments. Rather, in Section III of the form, the evaluating psychologists are asked to explain, in narrative form, their reasons for the degree of

limitation opined and the impact of the limitations on Plaintiff's ability to perform basic work activities.  In other words, the consultants use Section III of the mental RFC form to translate the raw, form limitations from Section I into workplace limitations specific to a given claimant. "It is the conclusions of state agency psychologists set forth in Section III . . . , and not their initial summary conclusions set forth in Section I, that are ultimately relevant to the calculation of a plaintiff s mental RFC."  Bacnik v. Colvin, No. 1:12-CV-801, 2014 WL 3547387, at *4 (M.D.N.C. July 17, 2014) (citing Program Operations Manual System ("POMS") 24510.060(B.2.a)) ("Section I is merely a worksheet . . . [and] does not constitute the RFC assessment") (emphasis omitted).

Here, as discussed above, both State agency psychological consultants ultimately concluded that, despite the varied, underlying limitations identified in Section I of their forms, Plaintiff remained capable of performing simple, routine, repetitive tasks in a low stress setting. (Tr. at 126, 178.) The ALJ expressly adopted these restrictions in her RFC.  (Tr. at 28.) The only omitted limitation from the consultants' opinions is their conclusion that Plaintiff requires a workplace with low social demands.  (Tr. at 34, 126, 178.)  However, the ALJ specifically explained that she gave this finding "little weight because it appears based on [Plaintiff's] self reports and not clinical findings" (Tr. at 34), and Plaintiff does not challenge this decision. Accordingly, the Court finds no error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 8th day of August, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge